Case 05-03089    Doc 83    Filed 03/30/07    Entered 03/30/07 17:16:54    Desc Main
                            Document      Page 1 of 17



**SIGNED this 30 day of March, 2007.**

_____
**JOHN T. LANEY, III
UNITED STATES BANKRUPTCY JUDGE**
_____


## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| STEWART FINANCE COMPANY, | : | CASE NOS. 03-30277 |
| STEWART NATIONAL FINANCE COMPANY, and | : | 03-30278 |
| D & E ACQUISITIONS, INC. | : | 03-30398 |
| | : | |
| Debtors. | : | Substantively Consolidated |
| | : | Under Case No. 03-30277 |
| _____ | : | |
| | : | |
| S. GREGORY HAYS, Chapter 11 Trustee of | : | JUDGE LANEY |
| STEWART FINANCE COMPANY, | : | |
| STEWART NATIONAL FINANCE COMPANY, and | : | |
| D & E ACQUISITIONS, INC. | : | |
| | : | |
| Plaintiff, | : | A.P. NO. 05-3089 |
| | : | |
| v. | : | |
| | : | |
| MORGAN STANLEY DW INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **MEMORANDUM OPINION**

This matter is before the Court on the Defendant's Motion for Summary Judgment in the action of Chapter 11 Trustee, S. Gregory Hays ("Trustee"), against Morgan Stanley DW, Inc. ("MSDW") to avoid and recover, as fraudulent transfers, certain payments made by Stewart Finance Company ("Debtor" or "SFC") to MSDW. The payments were to be applied to margin accounts opened by and belonging to former principal of Debtor and the now deceased, John Benjamin Stewart, Jr. ("Stewart"). On April 12, 2006, the Court held a hearing on the motion for summary judgment and heard oral argument from the parties. At the conclusion of the hearing, the Court took the matter under advisement, inviting the parties to submit briefs, as they saw fit, at any time prior to the Court's ruling.

For the reasons set forth below, MSDW's Motion for Summary Judgment will be granted as to all counts of the Trustee's Amended and Restated Complaint.

## **STANDARD OF REVIEW**

Summary judgment is appropriately entered by the court if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[1] In determining whether a genuine issue of material fact exists, the court must construe the evidence in a light most favorable to the non-moving party.[2] The moving party bears the initial burden of proving that, given the evidence of record, no reasonable jury could return a verdict for the non-moving party.[3] Once the moving party satisfies the initial burden, then the burden shifts to the non-moving party who must come forward with specific facts beyond its pleadings, by way of affidavits,

---

\* For ease of identification, many of the footnotes to follow include reference to the docket entry number of the document cited.
[1] Fed. R. Bankr. P. 7056(c).

2

depositions, answers to interrogatories, and admissions on file, which show that there is a genuine issue to be tried.[4] In cases in which the applicable substantive law requires the non-moving party to bear the burden on a particular issue or issues, the moving party is under no obligation to submit evidentiary materials negating the claim.[5] Rather, the moving party may rest on a demonstration that the record contains no evidence to support the non-moving party's position on that issue and requires the non-moving party to submit evidentiary materials sufficient to show that a genuine issue of material fact exists and must be tried.[6] Entry of judgment is mandated against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[7]

## **FINDINGS OF FACT**

Debtor, Stewart Finance Company ("SFC"), is a Georgia corporation that formerly operated a chain of consumer finance businesses.[8] John Benjamin Stewart, Jr. ("Stewart"), now deceased, was the former principal of SFC.[9] Morgan Stanley DW, Inc. ("MSDW") is one of the world's largest diversified financial services companies.[10] On March 6, 1993, Stewart opened his initial individual margin account with MSDW.[11] The account was assigned number 769-063991 and was

---

[2] Mauter v. Hardy Corp., 825 F.2d 1554, 1556 (11th Cir.1987).
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[5] COLLIER ON BANKRUPTCY 10:7056.06 at 7056-13 (15th ed. rev. 2006).
[6] *Id*.
[7] *Celotex Corp.*, 477 U.S. at 322; Wilson v. Lemington Home for the Aged, 2000 WL 33712287 at *1 (W.D. Pa. Apr. 12, 2000) (not reported in F.Supp.2d).
[8] MSDW Statement of Uncontested Facts at ¶ 1 (doc. 13); Trustee's Preliminary Response to Statement of Uncontested Facts at 1 (doc. 22).
[9] *Id*.
[10] MSDW Statement of Uncontested Facts at ¶ 2 (doc. 13); Trustee's Preliminary Response to Statement of Uncontested Facts at 1 (doc. 22).
[11] MSDW Statement of Uncontested Facts at ¶ 3 (doc. 13); Trustee's Preliminary Response to Statement of Uncontested Facts at 1 (doc. 22).

titled "John B. Stewart Jr."[12] Herbert A. Mendel, a former defendant in this adversary proceeding, was the MSDW stockbroker assigned to Stewart's margin account.[13] On June 28, 1999, Stewart opened a second margin account with MSDW. The account was assigned number 769-011138 and titled "John C. Stewart, Acct #2." Mr. Mendel was also assigned as stockbroker for this account.[14]

On August 3, 1994, SFC opened a margin account with MSDW. The account was assigned number 769-071809 and was titled "Stewart Finance Company, Attn: Ben Stewart." Mr. Mendel was also assigned as the stockbroker for this account.[15] On August 10, 1994, a Corporate Account Agreement & Enabling Resolution was completed in connection with the opening of the SFC margin account. This agreement authorized MSDW to open a securities account for SFC. The agreement also authorized Stewart (as president) and Janice Jackson/Janice Wallace (as corporate secretary), to issue instructions concerning the SFC margin account. Both Stewart and Ms. Jackson signed the agreement on behalf of SFC.[16]

SFC delivered thirty-nine (39) separate checks to MSDW for deposit into Stewart's personal margin accounts between January 2000 and July 2002.[17] The total amount deposited into Stewart's accounts by way of these thirty-nine (39) checks was $3,298,662.00.[18] On January 11, 2001, $37,500.00 worth of securities was transferred from SFC's margin account into one of Stewart's

---

[12] MSDW Statement of Uncontested Facts at ¶ 3 (doc. 13); Trustee's Preliminary Response to Statement of Uncontested Facts at 1 (doc. 22).

[13] *Id.*

[14] MSDW Statement of Uncontested Facts at ¶ 4 (doc. 13); Trustee's Preliminary Response to Statement of Uncontested Facts at 1 (doc. 22).

[15] MSDW Statement of Uncontested Facts at ¶ 6 (doc. 13); Trustee's Preliminary Response to Statement of Uncontested Facts at 2 (doc. 22).

[16] MSDW Statement of Uncontested Facts at ¶ 8 (doc. 13); Trustee's Preliminary Response to Statement of Uncontested Facts at 2 (doc. 22) (it should be noted that in the Trustee's response, the Trustee conditioned his admission with regard to the Corporate Account Agreement & Enabling Resolution on a true and correct copy of the agreement being set forth in the record).

[17] MSDW Statement of Uncontested Facts at ¶ 10 (doc. 13); Trustee's Preliminary Response to Statement of Uncontested Facts at 2 (doc. 22).

[18] *Id.*

4

margin accounts.[19] On June 11, 2001, a cash transfer in the amount of $4,073.00 was made from SFC's margin account to one of Stewart's margin accounts. On April 1, 2002, a transfer of securities totaling $347,989.00 was made from SFC's margin account to one of Stewart's margin accounts. Transfers from SFC to one of Stewart's two margin accounts during the four-year period preceding the petition date totaled $3,688,224.00. Table 1 below represents the individual check transfers made by SFC to Stewart's MSDW margin accounts and Table 2 represents the inter-account securities transfers made from SFC's MSDW margin account to one of Stewart's MSDW margin accounts.

**TABLE 2—SFC Check Transfers to Stewart MSDW Margin Accounts**

| CHECK DATE | CHECK NUMBER | PAYEE | AMOUNT TO ACCOUNT 769-063991 | AMOUNT TO ACCOUNT 769-011138 | TOTAL |
|---|---|---|---|---|---|
| 1/5/2000 | 922949 | Dean Witter Reynolds | $750,000.00 | | $750,000.00 |
| 1/28/2000 | 923399 | Dean Witter Reynolds | $20,000.00 | | $20,000.00 |
| 2/4/2000 | 923651 | Dean Witter Reynolds | | $100,000.00 | $100,000.00 |
| 2/7/2000 | 923757 | Dean Witter Reynolds | $250,000.00 | | $250,000.00 |
| 3/30/2000 | 900668 | Dean Witter Reynolds | $125,000.00 | | $125,000.00 |
| 4/17/2000 | 901216 | Dean Witter Reynolds | $100,000.00 | | $100,000.00 |
| 5/25/2000 | 902176 | Dean Witter Reynolds | $25,000.00 | | $25,000.00 |
| 7/13/2000 | 903592 | Dean Witter Reynolds | $30,000.00 | | $30,000.00 |
| 9/7/2000 | 905253 | Dean Witter Reynolds | $198,453.00 | | $198,453.00 |
| 10/2/2000 | 905844 | Dean Witter | $10,000.00 | | $10,000.00 |
| 10/10/2000 | 906308 | Herbert A. Mendel…[20] | $70,000.00 | | $70,000.00 |
| 10/13/2000 | 906417 | MSDW[21] | | $25,000.00 | $25,000.00 |
| 10/19/2000 | 906578 | MSDW | $25,000.00 | $15,000.00 | $40,000.00 |
| 10/26/2000 | 906784 | MSDW | $20,000.00 | | $20,000.00 |
| 11/20/2000 | 907600 | MSDW | | $11,000.00 | $11,000.00 |
| 11/22/2000 | 907728 | MSDW | $5,000.00 | $21,000.00 | $26,000.00 |
| 11/22/2000 | 907729 | MSDW | $20,000.00 | | $20,000.00 |

---

[19] MSDW Statement of Uncontested Facts at ¶ 12 (doc. 13); Trustee's Preliminary Response to Statement of Uncontested Facts at 2 (doc. 22).

[20] This check was made payable to "Herbert A. Mendel, SVP, Dean Witter."

[21] For purposes of Table 1, "MSDW" is the abbreviation given to "Morgan Stanley Dean Witter." The checks in Table 1 with the payee shown as "MSDW" were actually made payable to "Morgan Stanley Dean Witter."

| | | | | | |
|---|---|---|---|---|---|
| 11/29/2000 | 907878 | Dean Witter Reynolds | | $101,350.00 | $101,350.00 |
| 11/30/2000 | 907882 | Dean Witter Reynolds | $115,000.00 | $12,000.00 | $127,000.00 |
| 12/21/2000 | 908665 | Dean Witter Reynolds | $122,000.00 | $22,000.00 | $144,000.00 |
| 2/8/2001 | 910253 | Dean Witter Reynolds | $100,000.00 | | $100,000.00 |
| 2/13/2001 | 910443 | Dean Witter Reynolds | $10,000.00 | | $10,000.00 |
| 2/13/2001 | 910444 | Dean Witter Reynolds | $5,000.00 | | $5,000.00 |
| 2/13/2001 | 910445 | Dean Witter Reynolds | $5,000.00 | | $5,000.00 |
| 3/2/2001 | 910999 | Dean Witter Reynolds | $85,000.00 | | $85,000.00 |
| 4/6/2001 | 912380 | Dean Witter Reynolds | $78,500.00 | $5,500.00 | $84,000.00 |
| 6/20/2001 | 914617 | Dean Witter Reynolds | $125,000.00 | | $125,000.00 |
| 9/18/2001 | 916950 | Dean Witter Reynolds | $82,000.00 | | $82,000.00 |
| 9/21/2001 | 917082 | Dean Witter Reynolds | $30,000.00 | | $30,000.00 |
| 10/1/2001 | 917423 | Dean Witter Reynolds | $3,600.00 | | $3,600.00 |
| 10/31/2001 | 917992 | Dean Witter Reynolds | $100,000.00 | | $100,000.00 |
| 1/30/2002 | 919903 | Dean Witter Reynolds | $301,259.00 | | $301,259.00 |
| 4/29/2002 | 922990 | Dean Witter Reynolds | $100,000.00 | | $100,000.00 |
| 7/2/2002 | 925037 | Dean Witter Reynolds | $75,000.00 | | $75,000.00 |
| | | | | | |
| | **TOTALS** | | **$2,985,812.00** | **$312,850.00** | **$3,298,662.00** |

**TABLE 2—SFC Inter-Account Securities/Funds Transfers to Stewart MSDW Margin Accounts**

| DATE | AMOUNT/VALUE AT TIME OF TRANSFER | TYPE | NUMBER OF SHARES | NAME OF SECURITY |
|---|---|---|---|---|
| 1/11/2001 | $37,500.00 | Securities | 10,000 | New Era of Networks, Inc. |
| 6/11/2001 | $4,073.00 | Funds | | |
| 4/1/2002 | $3,400.00 | Securities | 10,000 | Finova Group, Inc. |
| 4/1/2002 | $24,794.00 | Securities | 4,600 | Storage Comuter Corp. |
| 4/1/2002 | $44,190.00 | Securities | 4,500 | Arris Group, Inc. |
| 4/1/2002 | $96,600.00 | Securities | 6,000 | Eclipsys Corporation |
| 4/1/2002 | $113,280.00 | Securities | 4,000 | Echostar Comm. Corp. CL A |
| 4/1/2002 | | Securities | 10,000 | Viatel, Inc. |
| 4/1/2002 | $35,975.00 | Securities | 2,500 | BEA Systems, Inc. |
| 4/1/2002 | $29,750.00 | Securities | 2,500 | Medical Action Ind., Inc. |
| | | | | |
| **TOTAL** | **$389,562.00** | | | |

Of the total check transfers, one transfer in the amount of $75,000.00 was transferred

subsequent to July 1, 2002. Including this $75,000.00 check transfer, SFC made an aggregate of $175,000.00 in check transfers and $347,989.00 in inter-account securities transfers within one year of SFC filing its bankruptcy petition.[22] Thus, within one year of the petition date, SFC made transfers totaling $522,989.00 to Stewart's margin accounts. Some portion of the funds transferred were used by MSDW to pay commissions or fees owing to MSDW in connection with the sale and purchase of securities held in Stewart's margin accounts.[23] All of the disputed transfers were deposited into Stewart's MSDW margin accounts at a time when there was an existing debit cash balance reflected on the monthly account statements.[24]

## DISCUSSION AND CONCLUSIONS OF LAW

The Trustee filed an Amended and Restated Complaint in this case on June 14, 2006. By way of the Amended and Restated Complaint, the Trustee abandoned his original allegation of actual fraud, dismissed Herbert A. Mendel as a co-defendant, and withdrew his demands for punitive damages and attorneys fees. The Amended and Restated Complaint sets forth three causes of action for the avoidance and recovery of certain of the transfers made by SFC to the margin accounts of Stewart as discussed above. The three remaining causes of action are all based upon alleged constructive fraud.

In Count I[25], the Trustee seeks avoidance under 11 U.S.C. § 544(b) and O.C.G.A. § 18-2-22(3)[26] of transfers totaling $3,613,224.00, composed of all check transfers, except for that one in the amount of $75,000.00 made on July 2, 2002, and all inter-account securities transfers. The

---

[22] SFC filed its bankruptcy petition on February 10, 2003.
[23] Amended Complaint at ¶ 14 (doc. 78); Amended Answer at ¶ 14 (doc. 80).
[24] MSDW's First Request for Admissions ¶ 33 (doc. 35, exhibit D); Trustee's Response to First Request for Admissions ¶ 33 (doc. 35, exhibit E).
[25] Trustee's Amended Complaint at 6 (doc. 78).
[26] O.C.G.A. § 18-2-22(3) (2001) (this section was repealed effective July 1, 2002 but is applicable to transfers made prior to that date).

7

Trustee seeks recovery of that amount from MSDW under § 550(a)(1) or (2) of the Bankruptcy Code ("Code").[27] The transfers described in Count I occurred prior to July 1, 2002.

In Count II, the Trustee seeks to avoid, under § 548(a)(1)(B), $522,989.00 in check and inter-account securities transfers, which occurred within one year of the petition date.[28] This amount includes the $75,000.00 check transfer made after July 1, 2002, the effective date of the repeal of O.C.G.A. § 18-2-22. The Trustee seeks recovery under § 550(a)(1) or (2).

Finally, in Count III, the Trustee seeks the avoidance, under § 544(b) and O.C.G.A. § 18-2-74(a)(2), of the $75,000.00 post-July 1, 2002 check transfer. The Trustee seeks recovery of that amount under § 550(a)(1) or (2).

*A. MSDW's Arguments in Favor of Summary Judgment*

In its Third Supplemental Reply Brief, MSDW, in answer to the Trustee's remaining constructive fraud claims, states that the Trustee faces three insurmountable obstacles: (1) The claims are absolutely barred by § 546(e), being as the transfers in question were margin or settlement payments made to a stockbroker; (2) Under the "control" test applied by the Eleventh Circuit Court of Appeals and other courts, the transfers, even if avoided, cannot be recovered from MSDW pursuant to § 550 because MSDW was not an initial transferee or other transferee from whom recovery may be had; and (3) The Trustee has not presented evidence sufficient to establish the essential elements of his constructive fraud claims.[29] As to this third basis for summary judgment, MSDW argues that the Trustee has neither proven that SFC did not receive reasonably equivalent

---

[27] Unless otherwise indicated, assume that statutory references made to section numbers only are to sections of the Bankruptcy Code found at Title 11 of the United States Code.

[28] Trustee's Amended Complaint at 7 (doc. 78).

[29] MSDW's Third Supplemental Brief at 1-2 (doc. 79-1).

value for the disputed transfers nor proven that SFC was insolvent on the date of the disputed transfers or became insolvent as a result of the transfers.[30]

The Court has carefully considered the merits of each of MSDW's arguments in favor of its motion for summary judgment. As will be discussed in detail below, it is the Court's conclusion that MSDW's first argument, *i.e.*, that § 546(e) provides a complete defense to the Trustee's remaining constructive fraud claims, is well-founded and supported by the evidence presented. Therefore, summary judgment in favor of MSDW is appropriate. The discussion that is to follow will pertain only to the application of § 546(e) in this case. It is not necessary for the Court to discuss MSDW's other contentions in favor of its Motion for Summary Judgment.

*B.  § 546(e) As A Complete Bar*

As noted in MSDW's Third Supplemental Brief, § 546(e) provides a complete bar and defense to avoidance claims brought by a bankruptcy trustee for any transfer that is a *margin payment* or *settlement payment* made to a stockbroker.[31] Section 546(e) provides as follows:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a *margin payment*, as defined in section 101, 741, or 761 of this title, or *settlement payment*, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, *stockbroker*, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.[32]

---

[30] *Id.* at 2, n. 1.

[31] MSDW's Third Supplemental Brief, Compendium at 2 (doc. 79-2).

[32] 11 U.S.C. § 546(e) (2007).

Note that the protection offered in § 546(e) expressly does not apply to actions brought by a trustee under § 548(a)(1)(A), which provides a trustee the means by which to avoid a transfer made with the actual intent to hinder, delay, or defraud creditors. Section 548(a)(1)(A) is not a statute under which the Trustee seeks avoidance in this case.

Section 546(e) is expressly applicable to actions brought under § 544 of the Code and under § 548(a)(1)(A). Therefore, so long as the requirements of the Section are satisfied, § 546(e) would serve as a complete defense to all three counts in the Trustee's complaint. Counts I and III of the Trustee's avoidance action are brought under § 544, which authorizes bankruptcy trustee's to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law . . . ."[33] Section 544 thereby incorporates Georgia fraudulent transfer or conveyance law, *i.e.*, those Georgia companion statutes under which the Trustee brings this avoidance action.[34] Count II is brought pursuant to § 548(a)(1)(A), therefore, § 546(e) is also an applicable defense to that count.

MSDW contends that the requirements of § 546(e) are satisfied because the transfers at issue were (1) "margin payments" or "settlement payments;" (2) made by or to a "stockbroker," as that term is defined by the Code; and (3) the transfers were made prior to the commencement of the bankruptcy case.[35]

### 1. Margin or Settlement Payment

Section 546(e) provides that for purposes of the Section, the term "margin payment" is defined in Sections 101, 741, and 761 of the Code. Applicable to this inquiry is the definition for margin payment found in § 101. Section 101(38) defines margin payment in the context of forward

---

[33] 11 U.S.C. § 544(b)(1) (2007).

[34] *See* Nat'l Forge Co. v. Clark (*In re* Nat'l Forge Co.), 344 B.R. 340, 369-72 (W.D.Pa. 2006); Quality Stores, Inc. v. Alford (*In re* Quality Stores, Inc.), 355 B.R. 629, 632-33 (Bankr. W.D. Mich. 2006).

contracts as a "payment or deposit of cash, a security or other property, that is commonly known in the forward contract trade as original margin, initial margin, maintenance margin, or variation margin, including mark-to-market payments or variation payments."[36] "Margin payment" is a broadly construed term and includes any payment by a debtor to pay for the purchase of securities or to reduce a deficiency in a margin account.[37]

Section 546 also states that the term "settlement payment," as used in that Section, is defined in §§ 101 and 741 of the Code. Again, the definition found in § 101 is applicable in this case and provides that in the context of forward contracts, a "settlement payment" is "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, a net settlement payment, or any other similar payment commonly used in the forward contract trade."[38] As suggested by this definition, the term "settlement payment" should be interpreted very broadly.

It was admitted by the Trustee that all of the disputed transfers in this case were deposits of cash or securities into an active margin account at a time when there was an existing debit cash balance.[39] After deposit, says MSDW, the funds were used to "reduce margin debt, purchase securities, or fund withdrawals within the margin accounts."[40] Considering the admission by the Trustee, the Court could not conclude other than that the check and inter-account securities transfers made by SFC to Stewart's MSDW margin accounts were "margin payments" as that term is used in

---

[35] 11 U.S.C. § 546(e) (2007).

[36] 11 U.S.C. § 101(38) (2007).

[37] COLLIER ON BANKRUPTCY 5:546.06[2][a] at 546-48 (15th ed. rev. 2006) (citing *Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846,848 (10th Cir. 1990); *Biggs v. Smith Barney, Inc.* (*In re David*), 193 B.R. 935 (Bankr. C.D. Cal. 1996)).

[38] 11 U.S.C. § 101(51A) (2007).

[39] MSDW's First Request for Admissions ¶ 33 (doc. 35, exhibit D); Trustee's Response to First Request for Admissions ¶ 33 (doc. 35, exhibit E).

[40] MSDW's Third Supplemental Brief, Compendium at 3 (doc. 79-2) (citing *Seitter v. Farmer's Commodities Corp.*

§ 546(e) and defined in § 101(38). The Trustee argues, however, that the payments were not margin payments because the transfers were not made to or for the benefit of Debtor SFC. The Court cannot find merit in this argument. The plain language of § 546(e) does not require such a condition for the application of that Section's bar to avoidance.

## 2. *Stockbroker*

Section 546(e) provides that a transfer that is a margin payment or a settlement payment cannot be avoided under section 544, 545, 547, 548(a)[41](1)(B), or 548(b) of the Code if the transfer was "made by or to a . . . stockbroker."[42] A "stockbroker," according to the term's definition found at § 101(53A), is a person who (1) has a customer, as defined in § 741 of the Code; *and* (2) is engaged in the business of effecting transactions in securities—(i) for the account of others; *or* (ii) with members of the general public, from or for such person's own account.

The Trustee argues that this requirement of § 546(e) cannot be satisfied since MSDW was not acting as a "stockbroker" with regard to the subject transfers. According to the Trustee, § 546(e) requires that the margin or settlement payment be made to a particular type of transferee, specifically, a "commodity broker, forward contract merchant, stockbroker, financial institution, or securities clearing agency . . . ."[43] The Trustee argues that MSDW has acknowledged that it is a diversified financial services company and that while MSDW is a "stockbroker" for the purposes of *some* financial transactions, it is not a stockbroker for purposes of *all* the business it transacts.[44] In sum, the Trustee contends that MSDW was not acting as a "stockbroker" when it received the

---

(*In re Yeagley*), 220 B.R. 402, 403-04 (Bankr. D. Kan. 1998); *Biggs v. Smith Barnet* (*In re David*), 193 B.R. 935, 940 (Bankr. C.D. Cal. 1996)).

[41] 11 U.S.C. § 101(53A) (2007).

[42] 11 U.S.C. § 546(e) (2007).

[43] Trustee's Brief in Response at 2 (doc. 30) (citing 11 U.S.C. § 546(e) (2007)).

[44] Trustee's Brief in Response at 2 (doc. 30).

subject transfers because those transfers were not made by the "customer" who held the particular mortgage account.[45]

Although § 101(53A) defines "stockbroker for purposes of § 546(e), the definition for "customer" as used in § 101(53A) is found in § 741(2) of the Code. That Section provides that the term "customer" includes:

> **(A)** entity with whom a person deals as principal or agent and that has a claim against such person on account of a security received, acquired, or held by such person in the ordinary course of such person's business as a stockbroker, from or for the securities account or accounts of such entity--
> - **(i)** for safekeeping;
> - **(ii)** with a view to sale;
> - **(iii)** to cover a consummated sale;
> - **(iv)** pursuant to a purchase;
> - **(v)** as collateral under a security agreement; or
> - **(vi)** for the purpose of effecting registration of transfer;
> 
> and
> 
> **(B)** entity that has a claim against a person arising out of--
> - **(i)** a sale or conversion of a security received, acquired, or held as specified in subparagraph (A) of this paragraph; or
> - **(ii)** a deposit of cash, a security, or other property with such person for the purpose of purchasing or selling a security.[46]

Considering the terms of § 741(2), the Trustee states that central to the definition, the "customer" must be involved in a "principal/agent relationship with the stockbroker on the account."[47] That relationship, says the Trustee, would ordinarily be established by an agreement setting forth the terms of the particular margin account. The Trustee notes that in this case, the account agreements for Stewart's two MSDW margin accounts—the accounts into which the subject transfers were

---

[45] *Id.*

[46] 11 U.S.C. § 741(2) (2007).

[47] Trustee's Brief in Response at 3 (doc. 30).

deposited—named John Benjamin Stewart, Jr. as the customer, rather than naming SFC.[48] The Trustee concludes by stating that in dealing with SFC on Stewart's MSDW margin accounts, MSDW was not acting as a "stockbroker" as required to qualify for the § 546(e) exception.[49]

As with any matter requiring statutory construction, the Court must begin with an analysis of the plain language or meaning of the statute in question.[50] Here, § 546(e) provides protection for transfers that are margin or settlement payments made to stockbrokers. A stockbroker is a person that has customers and engages in the business of effecting transactions in securities. MSDW meets the requirements of being a stockbroker as set forth in § 101(53A). There is no requirement in the Code sections with which the Court is concerned here that require the transferor, in this case SFC, to be a "customer" of the "stockbroker" *for purposes of the transfers in question*. Section 546(e)'s requirements are clear and unambiguous—a transfer is protected from avoidance by a bankruptcy trustee where the transfer was a margin payment or settlement payment made to a stockbroker. Section 101(53A) is clear and unambiguous that a stockbroker is a person who has at least one customer, as that term is defined in § 741(2), and who engages in the business of effecting transactions in securities. The terms of § 741(2) are also clear and unambiguous.

MSDW clearly had at least two "customers" at the time of the subject transfers—SFC and Stewart. SFC and Stewart both had claims against MSDW on account of securities, received, acquired, or held by MSDW in the ordinary course of MSDW's business, for sale, safekeeping, etc. In addition to having at least two customers, it is clear that MSDW also engaged in the business of effecting transactions in securities. The evidence is undisputed that securities were transferred from the MSDW margin account of SFC to the MSDW margin accounts of Stewart.

---

[48] *Id.*

A broad application of the plain terms of § 546(e) is consistent with the legislative history of the statute.[51] It is clear from the House Reports that Congress intended only one exception to the application of the § 546(e) and that was in cases of actual fraud:

> The commodities and securities markets operate through a complex system of accounts and guarantees/. Because of the structure of the clearing systems in these industries and the sometimes volatile nature [of] the markets, certain protections are necessary to prevent the insolvency of one commodity or security firm from spreading to other firms and [possibly] threatening the collapse of the affected market . . . .
>
> [Section 546(e)] will ensure that the avoiding powers of the trustee are not construed to permit margin or settlement payments to be set aside except in cases of fraud . . .[52]

It should be noted that the Trustee does suggest authority for his proposition that the protections of § 546(e) do not apply in this case because with regard to the subject transfers, SFC was not a "customer" of MSDW with respect to the subject transfers and, therefore, MSDW was not a "stockbroker" for purposes of those transfers. In the case of *In re Paramount Citrus, Inc.*,[53] the district court considered a factual situation similar to that presented here and held that a commodities broker was not entitled to the protection provided by the safe harbor provision of § 548(d)(2)(B) because the principal of the corporate debtor, and not the debtor itself, received the benefit of margin payments made by the debtor into the principal's commodity trading account.[54]

In *Paramount Citrus*, the corporate debtor's principal opened a commodities trading account in his individual name with A.G. Edwards & Sons. Within thirty days prior to the corporation filing

---

[49] *Id.*
[50] United States v. Acosta, 421 F.3d 1195, 1197 (11th Cir. 2005).
[51] *See* H.R. REP. NO. 97-420, at 2 (1982), *reprinted in* 1982 U.S.C.C.A.N. 583, 583.
[52] *Id.*
[53] 268 B.R. 620 (M.D. Fla. 2001).
[54] *Id.* at 625-26.

15

Case 05-03089   Doc 83   Filed 03/30/07   Entered 03/30/07 17:16:54   Desc Main
Document      Page 16 of 17

for bankruptcy protection, the debtor's principal caused the corporate debtor to pay A.G. Edwards $16,015.00 in corporate funds to satisfy margin calls made on the principal's commodity trading account. The trustee sued A.G. Edwards pursuant to § 548(a)(1)(B) and § 550 to avoid and recover the payment as a fraudulent transfer. The district court affirmed the bankruptcy court's entry of summary judgment in favor of the trustee. The district court held, as a matter of law, that the safe harbor for margin payments found in § 548(d)(2)(B) failed to protect A.G. Edwards because that Section does not apply unless the debtor itself has the account with the commodity broker.[55]

The only issue on appeal to the district court was whether, as is required by § 548(a)(1)(B), the debtor received reasonably equivalent value in exchange for the transfer or margin payments.[56] Under § 548(a)(1)(B), as it was written at the time of the action in *Paramount Citrus*, a bankruptcy trustee could avoid a transfer by a debtor within one year of the petition date where the debtor received *less than equivalent value* in exchange for the transfer and where the insolvency and capital requirements of the statute were met.[57] The district court in *Paramount Citrus* concurred with the bankruptcy court that the safe harbor provision of § 548(d)(2)(B) (which provides the circumstances under which a stockbroker, commodity broker, and the like, may *take for value*), when read in pari passu § 548(a)(1), would provide no protection unless it was the debtor's account into which the transfers were made. The district court reasoned that § 548(d)(2)(B) did not apply because the corporate debtor was not a customer of the commodity broker.[58] The district court stated that if the safe harbor was permitted to apply, any transfer in the form of a margin payment to a commodity broker, stockbroker, financial institution, etc. would be protected even if the transfer did not benefit

---

[55] *Id.* at 625.
[56] *Id.* at 623.
[57] 11 U.S.C. § 548(a)(1)(B) (2001).
[58] *In re Paramount Citrus*, 268 B.R. at 625-26.

the debtor.[59]

Unlike the case at bar, the court in *Paramount Citrus* was called to apply § 548(d)(2)(B), not § 546(e) as is required to be applied here. In fact, there is absolutely no mention of § 546(e) in the *Paramount Citrus* opinion or its recitation of the bankruptcy court's findings. Although the Court does not disagree with the reasoning of *Paramount Citrus* with regard to the circumstances considered in that case, the court's reasoning and holding cannot be persuasive as to the issues and facts before this Court because no mention of § 546(e) was made. The Court can only conclude that A.G. Edwards did not raise § 546(e) as a defense at the bankruptcy court level and therefore the issue was not discussed by the district court on appeal.

## **CONCLUSION**

Considering the plain language of § 546(e) and the related definitional sections of the Code, the Court must conclude when applying the facts of this case that the transfers in question qualify as margin or settlement payments and that MSDW qualifies as a stockbroker. As such, the Trustee is necessarily prohibited by § 546(e) from avoiding the subject check and inter-account securities transfers made by SFC to the MSDW margin accounts of John Benjamin Stewart, Jr. The Court therefore finds that there is no issue of material fact remaining to be determined and that MSDW has carried its burden of proving that § 546(e) is applicable to bar the Trustee from avoiding the transfers in question. As such, MSDW's Motion for Summary Judgment is granted as to all counts of the Trustee's Amended and Restated Complaint.

---

[59] *Id.* at 626.